# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JOHN W CARROLL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:17-00897-CV-RK |
| | ) |
| NANCY A. BERRYHILL, ACTING | ) |
| COMMISSIONER, SOCIAL | ) |
| SECURITY ADMINISTRATION; | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff John Carroll ("Plaintiff")'s appeal brought under 42 U.S.C. § 205(b) of the Social Security Act seeking review of Defendant Social Security Administration ("SSA")'s decision that Plaintiff was overpaid social security benefits and adjustment or recovery of the overpayment should not be waived as rendered in a decision by an Administrative Law Judge ("ALJ"). For the reasons below, the decision of the ALJ is **REVERSED**.

### Standard of Review

Under Title II of the Social Security Act ("the Act") where a plaintiff has been overpaid old-age, survivors, or disability insurance benefits, the SSA may seek an adjustment or recovery of the overpaid benefits. 20 C.F.R. § 404.504. An overpayment is the difference between the amount of benefits and the amount to which the individual was actually entitled. *Id.* When the Commissioner of Social Security determines that an individual has received an overpayment of benefits, "proper adjustment or recovery shall be made." 42 U.S.C. § 404(a)(1). However, recovery or adjustment of benefits must be waived if: (1) the plaintiff is not at fault for the overpayment, and (2) the adjustment or recovery of the overpayment would either defeat the purpose of the Act or be against equity and good conscience. 20 C.F.R. § 404.506(b)(1). The plaintiff has the burden to prove he or she is eligible for waiver of overpayment. *Coulston v. Apfel*, 224 F.3d 897, 900 (8th Cir. 2000).

The Court's review of the ALJ's decision must be supported by substantial evidence on the record as a whole. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)).

**Background**

The issue before this Court is whether substantial evidence supports the ALJ's decision that Plaintiff was overpaid benefits in the amount of $2,292.00, and if so, whether Plaintiff qualifies for waiver of the overpayment. Plaintiff began receiving disability benefits on July 31, 2007. In June 2014, Plaintiff did not receive his regular monthly benefit amount. After inquiring, Plaintiff learned the payments were reduced to account for a previous overpayment of benefits. Plaintiff applied for critical payments which would allow Plaintiff to continue receiving benefits while the overpayment issue was investigated.

On July 16, 2014, the SSA issued a critical payment to Plaintiff. The payment was for $764.00 and included a notice that stated Plaintiff would receive $764.00 each month but Plaintiff may have to repay any overpaid benefits. On September 9, 2014, the SSA issued Pliantiff another critical payment in the amount of $1,528.00, and the notice stated, "[w]e are sending you a check for $1,528.00 . . . includes benefits due you through August 2014 . . . . [i]f we do pay you too much, you may have to pay back the amount of the overpaid check(s)." (Doc. 10-1 at 54.) Both parties agree $1,528.00 was the combined payment for July 2014 and August 2014 critical payments. On October 1, 2014, the SSA issued a notice informing Plaintiff that he was overpaid benefits in the amount of $2,292.00 beginning July 14, 2014, through September 9, 2014. The notice stated, "[w]e will pay you a monthly check of $764.00 until we start to collect the overpayment." (Doc. 10-1 at 56.)

Plaintiff's request for reconsideration of wavier was denied on January 30, 2015, and the SSA determined Plaintiff was overpaid benefits in the amount of $2,292.00. Thereafter, Plaintiff filed a written request for a hearing with an ALJ. On March 23, 2016, Plaintiff, Plaintiff's father, and Plaintiff's attorney appeared at a hearing before the ALJ. After the hearing, the ALJ

2

determined: (1) "[t]he claimant was overpaid benefits in the amount of $2,292.00 during the period July 14, 2014 to September 4, 2014;" (2) "[t]he claimant was at fault in causing the overpayment;" (3) "[r]ecovery of the overpayment is not waived;" and (4) "the claimant is liable for repayment of $2,292.00 during the period July 14, 2014 to September 4, 2014." (Doc. 10-1 at 21.)

## Discussion

Plaintiff presents the following arguments on appeal: (1) there was no overpayment to Plaintiff, and (2) even if Plaintiff was overpaid, waiver is appropriate because Plaintiff is not at fault for the overpayment and the adjustment or recovery of the overpayment would either defeat the purpose of the Title II of the Social Security Act or be against equity and good conscience.

### A. Overpayment

On October 1, 2014, the SSA notified Plaintiff he was overpaid $2,292.00 in benefits. The notice from the agency stated that Plaintiff's monthly benefit is $764.00 per month.[1] Plaintiff's bank statements indicate the following payments were made during the relevant time period:

(1) July 2014 benefit:	$0.00
(2) August 2014 benefit paid on September 8, 2014:	$1,528.00[2]
(3) September 2014 benefit paid on October 3, 2014:	$764.00

Defendant argues substantial evidence supports the ALJ's decision that Plaintiff was overpaid $2,292.00 in benefits from July 14, 2014, through September 9, 2014. Defendant argues the $2,292.00 overpayment represents the two critical payments of $764.00 and $1,528.00 that were paid to Plaintiff. While Defendant concedes "the agency's records in this case are not perfect," Defendant argues the hearing testimony supports the ALJ's decision that Plaintiff was overpaid benefits in the amount of $2,292.00.

The Court finds substantial evidence does not support the ALJ's decision that Plaintiff was overpaid in the amount of $2,292.00 beginning July 14, 2014 through September 9, 2014. First, the hearing testimony provides evidence that no overpayment was made. At the hearing, Plaintiff's father testified that he helps Plaintiff with finances and budgeting, including the receipt and

---

[1] The record indicates that Plaintiff's monthly benefit amount is $868.90; however, $104.90 is withheld from Plaintiff's benefits for Medicare Part D payments. Therefore, Plaintiff's monthly benefits are in the amount of $764.00. Monthly benefits are paid the month after they are due. For example, May benefits would be paid to Plaintiff in June.

[2] The parties agree the $1,528.00 calculation is the combination of Plaintiff's July 2014 and August 2014 benefits.

3

budgeting of Plaintiff's social security benefits. When asked if Plaintiff received any extra payments or money from SSA, Plaintiff's father responded, "We never got any extra payment, no. They sent us a letter stating that the possibility that if this is overpayment that, you know, if you received a monthly check and this one too that they'd be taking it back but he never did." (Doc. 10-1 at 35-36.) Second, at the hearing Plaintiff's father submitted a letter for the ALJ's consideration. The letter stated that, at that time, Plaintiff received $865.50 per month in social security disability income benefits. Third, in addition to the letter, Plaintiff's father also provided a copy of Plaintiff's bank statements covering the overpayment time period. Plaintiff's bank statements indicate that no overpayment was made. Plaintiff's bank statements show the following transactions occurred during the relevant time period: July 2014 benefit: $0.00; August 2014 benefit: $1,528.00; and September 2014 benefit: $764.00. Plaintiff's bank statements show that Plaintiff received an average monthly benefit of $764.00. Although those payments were critical payments, they were equivalent to Plaintiff's normal monthly benefit amount. Therefore, Plaintiff's receipt of critical payments did not result in an overpayment. Accordingly, the Court finds there is not substantial evidence in the record to support the ALJ's decision that Plaintiff was overpaid at all.

### B. Fault

While the Court finds that substantial evidence does not support the ALJ's decision that Plaintiff was overpaid benefits, even if an overpayment was made to Plaintiff, substantial evidence does not support the ALJ's decision that Plaintiff was at fault for the overpayment. Fault applies only to the plaintiff; whether the SSA was at fault does not relieve the plaintiff of adjustment or recovery of benefits. 20 C.F.R. § 404.507. To determine whether the plaintiff is at fault in the overpayment, the ALJ must consider all pertinent circumstances, including the plaintiff's age and intelligence, and any physical, mental, educational, or linguistic limitations. *Id.* "Upon determining whether repayment should be waived . . . . a person is at fault if an incorrect payment resulted from . . . the recipient's acceptance of payment which he knew or should have known was incorrect." *Melichar v. Astrue*, 2009 U.S. Dist. LEXIS 96747, at *24 (E.D. Mo. Oct. 6, 2009).

The ALJ concluded that Plaintiff was at fault because: (1) Plaintiff was notified that overpayments might result, and if they did, Plaintiff would need to pay back any overpayment. The Court finds there is not substantial evidence to support the ALJ's decision that Plaintiff is at fault in accepting the benefits. First, the record does not reflect that Plaintiff knew or should have

known the July, August, and September 2014 payments were incorrect. The ALJ is required by statute to consider Plaintiff's mental or educational limitations in the fault analysis. *Coulston*, 224 F.3d at 899. *See also* 42 U.S.C. § 404(b). Here, the ALJ does not discuss Plaintiff's mental or educational limitations in the fault analysis. Plaintiff testified in the hearing with the ALJ that he requires assistance with finance and budgeting. "Well, my father writes out my bills for me. He goes over them with me every month and shows me that he's writing the check and everything . . . He just helps me with the finances." (Doc. 10-1 at 28.) When asked if Plaintiff knew how much his monthly benefits were, his response was that Plaintiff's father controls Plaintiff's finances and allocates money to Plaintiff for spending and expenses. Plaintiff stated, "I don't know the exact figure because I'm only allowed so much of it for spending. I get $50 a week for my spending." (Doc. 10-1 at 30.) Because the record indicates that Plaintiff does not manage his own money and does not know the exact amount of monthly benefits he receives, this weighs in favor of finding that, if there was an overpayment, Plaintiff did not and should not have known any acceptance of benefits was incorrect.

Second, the communications Plaintiff received from the agency regarding his benefits and overpayment are confusing *See Melichar*, 2009 U.S. Dist. LEXIS 96747, at *27 (the court held that confusing communications from the SSA weighed in favor of finding the plaintiff without fault). SSA's July 19, 2014, notice to Plaintiff stated:

> We are sending you a check for $764.00. This includes benefits due you through June 2014. We have not finished the work on your claim at this time. Because of this, you may get more than one check. If you do, please let us know right away. We may be paying you too much money. If we do pay you too much, you may have opt pay back the amount of the overpaid check(s).

(Doc. 10-1 at 53.) Plaintiff did not receive more than one check each month during the relevant time period. Further, each check he received was for his normal monthly payment amount, or as in the case of the check received in August 2104, the large amount was the total of July 2014 and August 2014 monthly payments combined. Therefore, if there was any overpayment, the notices Plaintiff received from the SSA and the overall record do not reflect that Plaintiff did or should have known that Plaintiff was accepting benefits in error.

### C. Whether Repayment Contravenes the Purpose of the Act or Equity and Good Conscience

If the plaintiff is considered to be at fault, the ALJ must determine whether recovery of the overpayment would defeat the purpose of the Act or go against equity and good conscience.

5

20 C.F.R. § 416.550(b); 20 C.F.R. § 404.509. Adjustment or recovery will defeat the purpose of the Act if the plaintiff requires substantially all of his current income (including social security monthly benefits) to meet his current ordinary and necessary living expenses. 20 C.F.R. § 404.508(b). Ordinary living expenses include: fixed living expenses including food, clothing, rent, utilities, and insurance; taxes; and other miscellaneous expenses which may reasonably be considered as part of the plaintiff's standard of living. 20 C.F.R. § 404.508(a) and (b). *See also Pittman v. Sullivan*, 911 F.2d 42, 47 (8th Cir. 1990) (adjustment or recovery of benefits will defeat the purpose of Title II if it "would deprive a person of income required for ordinary and necessary living expenses") (quoting *Groseclose v. Bowen*, 809 F.2d 502, 504 (8th Cir. 1987). Recovery or adjustment of the overpayment is without equity and good conscience if the plaintiff changed his position for the worse or relinquished a valuable right because of reliance upon a notice that a payment would be made or due to the overpayment itself. *Groseclose*, 809 F.2d at 504.

Plaintiff's father's letter stated Plaintiff had monthly income of $865.50 from benefits and monthly expenses of $865.52. At the hearing, Plaintiff testified he has the following expenses: "$50.00 a week to spend, $100.00 is used to make a monthly car payment, $400.00 is paid for rent and car insurance is a little over $100.00 per month." (Doc. 10-1 at 20.) The record reflects that Plaintiff does own a car and rents the basement portion of his parents' house from his parents. *See Banuelos v. Apfel*, 165 F.3d 1166, 1170-71 (7th Cir. 1999) (a plaintiff's assets should be considered to determine whether repayment defeats the purpose of social security).

The Court finds adjustment or recovery of benefits would be against the purpose of the Act and against equity and good conscience because repayment would deprive Plaintiff of "income required for ordinary and necessary living expenses." *Pittman*, 911 F.2d at 47. Plaintiff's only source of income is social security payments, and these monthly payments are equivalent to Plaintiff's monthly expenses. Plaintiff's annual income is $10,386.00. Plaintiff's income is below the poverty line for a single person, and therefore, requiring repayment of benefits would be a hardship for Plaintiff and against the purpose of the Act.[3] Finally, Plaintiff does not receive any income other than monthly social security benefits; therefore, Plaintiff relies on these benefits as his only source of income. *See Melichar*, 2009 U.S. Dist. LEXIS 96747, at *29 (the court

---

[3] The poverty threshold in 2014 for a single individual was $11,670. People Keep, *2014 Federal Poverty Line (FPL) Guidelines*, https://www.peoplekeep.com/blog/federal-poverty-line-fpl-guidelines-2014 (last visited Dec. 15, 2018).

considered plaintiff's income, which was below the poverty line, in finding repayment of benefits was against the purpose of the Act and against equity and good conscience); *Coulston*, 224 F.3d at 901 (the court found the plaintiff "has a hard time making ends meet," therefore, taking a small amount of benefits from him would defeat the purpose of social security). Accordingly, there is not substantial evidence to support the ALJ's decision, and there is substantial evidence to establish that recovery or adjustment of benefits would contravene the purpose of the Act and be against equity and good conscience.

## Conclusion

This Court has the authority and ability to order the ALJ to waive adjustment or recovery of overpaid benefits where further hearings would "merely delay receipt of benefits." *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir. 1984). "Sentence 4 of 42 U.S.C. § 405(g) states that a court has the power to reverse the decision of the Commissioner without remanding." *Melichar*, 2009 U.S. Dist. LEXIS 96747, at *31 (citations omitted). The Court finds that the decision of the ALJ is not supported by substantial evidence. First, substantial evidence establishes there was no overpayment of benefits. Second, even if there were any overpayment, recovery is waived because Plaintiff is without fault and any repayment would defeat the purpose of the Act and contravene equity and good conscience. Accordingly, pursuant to 42 U.S.C. § 405(g), sentence 4, the decision of the Commissioner is **REVERSED**.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: January 28, 2019